# CIRCUIT COURT OF BALTIMORE CITY.

Filed January 29, 1914.

HANNAH E. DUNN
VS.
RICHARD A. DUNN.

*James Fluegel* for plaintiff.
*Thomas J. Mason* for defendant.

DAWKINS. J.—

This is a bill for permanent alimony, alleging abandonment without cause and excessively vicious conduct on the part of the husband. The husband has answered the bill alleging vicious treatment by the wife and unfaithfulness on her part. The husband has filed a cross-bill alleging undue fondness for a godchild named Leslie Pate and also assaults on the defendant, abandonment and desertion and vicious conduct and praying for divorce a mensa et thoro.

At the request of the counsel in the case I have agreed to pass upon the exceptions to the testimony. To do this I have read the testimony over, including the reading at the hearing, three times. This being necessary owing to the fact that exceptions on both sides practically cover the whole range of testimony. Owing to the great mass of testimony taken and the manner of taking exceptions, I have concluded that this was a waste of time, because, if this case goes to a higher court that court would have the benefit of the entire facts proven. It has been difficult to tell in some instances just what question was intended to be objected to and also the reason for the objection. In some cases in which objection was made to a portion of the

answer the objected portion has not been pointed out. Whilst much of the testimony is irrelevant and much of it brings out the facts in an improper manner and much of it is mere repetition, yet in view of the fact that there are two bills in the case what would seem in some instances open to criticism would become proper testimony under one or the other bill.

As there is enough that is not objected to in the testimony to enable me to arrive at my conclusions, it is not important that I should strike out anything, but I have passed upon such of the objections as I deem I could properly do.

The exceptions to the testimony filed by counsel for the defendant could not be considered on account of the general and indefinite character of the same. I do not think the court is justified in violating the well-established rule, nor is the court justified in trying to find which question has been marked in the case as objected to by counsel. Adopting the words of the exceptions filed by counsel for the defendant and trying to find out what was objected to in the testimony of Dr. H. E. Wooden, I find nothing marked on the record as objected to in his testimony—so that all of the exceptions on the part of the defendant are overruled for the reasons given.

As to the exceptions filed by the defendant, I deem them too general and I do not think it is proper, therefore, for me to pick out the questions to which exceptions have been specially noted. Some of the questions seem to be objected to on the ground of leading and some seem to be generally objected to. As the party will have the full benefit of the record if the case goes to the Court of Appeals, I shall not pass upon the exceptions in that form.

This much for the testimony. It might be easier to dispose of the cases separately, because the merits of the controversy, as it has appeared to the Court, might be best explained in that way. Taking first the wife's bill for permanent alimony, I think it is a well-established principle that in asking for this relief and the granting of permanent alimony she should have grounds at least for divorce a mensa et thoro.

The alleged separation in this case took place June 19, 1913; the bill was filed two days later; counsel had been consulted about a year before. On the night of the separation, plaintiff must have had her clothes all packed for the parting. Whether she expected it that night I do not gather from the testimony, but the general conduct testified to and which she does not satisfactorily deny, taken in connection with such remarks as "never intending to end her days with him" lead me to the conclusion that this parting was not a matter brought about by what happened that night. I find nothing that can be construed into such gross or vicious conduct on the part of the husband as would under the circumstances of that one quarrel justify the wife in abandoning her home. I attach no importance to the effort to get in the house at a later day nor to the fact that the keys she had did not fit. When she wanted to get into the house she could get in. She never, so far as the testimony discloses, ever expressed any particular desire or willingness to return to her home, and in saying this I am not unmindful of the fact that the husband did nothing to make her come back, even though he did say that the house was there and she had the keys. It does not appear to me that the wife was ever afraid of her husband or that she ever tried to return to his domicile with the wish or intention of staying there. It would serve no useful purpose to review this mass of testimony further than to say that from all the facts I feel that the wife has not been treated in such a way as to justify the allowance of permanent alimony upon the state of facts as here shown.

It may be that if the husband from this time fails to provide a home and she shows a perfect willingness to live with him, then she might be entitled to claim his support.

As to the cross-bill there is no sounder or more cherished principle than this, that he who seeks equity must do equity and he who comes into a Court of Equity must come with clean hands. Divorce should not be sought or obtained lightly, because people forsooth tire of each other, but there should be some real cause and the person seeking it should not be open to any just censure or blame.

Whilst there might have been much provocation leading up to the final break in June, 1913, and if what I

have stated in disposing of the bill of the wife is true, there was provocation, yet I can not feel that the defendant's conduct was without blame. An invitation to leave his bed or house came close to forcing an abandonment. It would seem that the wife was told to go out, but yet there is no testimony that the door of repentance has been entirely closed. There is evidence that the Arlington home was no longer the favorite abiding place of the defendant. "Trifles light as air are to the jealous mind strong as proof from holy writ." The "Come on Dick" incident is not calculated to add to the wife's happiness and peace of mind, or is the Good Samaritan conduct calculated to continue confidence or peace of mind.

A true husband would hardly take another woman to lunches and moving picture entertainments, nor would he think it right to change his living place to the City and leave his children for whom he had expressed a fondness and so much tender regard (when the stepmother lavished her affections on the godchild) to look after themselves.

It seems to me probable that if there had been no Mrs. Ferguson and no Leslie Pate and no Joseph Pate there never would have been any serious trouble between these people. With these parties eliminated, it might be possible for this husband and wife at their advanced age, now on the shady side of life, to again live together as they should do. I do not think the Defendant makes out such a case as entitles him to a divorce a mensa et thoro.

For the reasons given the bill of the plaintiff as well as the cross-bill of the defendant will be dismissed, each party to pay one-half of the costs.